# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 13-20622
Consolidated with No. 13-20715

————————

United States Court of Appeals
Fifth Circuit

**FILED**

September 3, 2014

Lyle W. Cayce
Clerk

In the Matter of:  TMT PROCUREMENT CORPORATION; A WHALE CORPORATION; B WHALE CORPORATION; C WHALE CORPORATION; D WHALE CORPORATION; E WHALE CORPORATION; G WHALE CORPORATION; H WHALE CORPORATION; A DUCKLING CORPORATION; F ELEPHANT INCORPORATED; A LADYBUG CORPORATION; C LADYBUG CORPORATION; D LADYBUG CORPORATION; A HANDY CORPORATION; B HANDY CORPORATION; C HANDY CORPORATION; B MAX CORPORATION; NEW FLAGSHIP INVESTMENT COMPANY LIMITED; RORO LINE CORPORATION; UGLY DUCKLING HOLDING CORPORATION; GREAT ELEPHANT CORPORATION,

                                        Debtors

-------------------------------

TMT PROCUREMENT CORPORATION; A WHALE CORPORATION; B WHALE CORPORATION; C WHALE CORPORATION; D WHALE CORPORATION; E WHALE CORPORATION; G WHALE CORPORATION; H WHALE CORPORATION; A DUCKLING CORPORATION; F ELEPHANT INCORPORATED; A LADYBUG CORPORATION; C LADYBUG CORPORATION; D LADYBUG CORPORATION; A HANDY CORPORATION; B HANDY CORPORATION; C HANDY CORPORATION; B MAX CORPORATION; NEW FLAGSHIP INVESTMENT COMPANY LIMITED; RORO LINE CORPORATION; UGLY DUCKLING HOLDING CORPORATION; GREAT ELEPHANT CORPORATION,

                                        Appellees

v.

VANTAGE DRILLING COMPANY,

                                        Appellant

No. 13-20622
c/w No. 13-20715

---

Appeals from the United States District Court
for the Southern District of Texas
and the United States Bankruptcy Court
for the Southern District of Texas

---

Before HIGGINBOTHAM, DAVIS, and HAYNES, Circuit Judges.

PER CURIAM:

Vantage Drilling Company ("Vantage") appeals three orders from the district court and two orders from the bankruptcy court. The orders were entered during the course of the Chapter 11 proceedings of twenty-one shipping companies. Their combined effect was to place certain shares of Vantage stock *in custodia legis* with the clerk of the court. Because we find that both courts below lacked subject-matter jurisdiction, we VACATE and REMAND.

## I

### A

In 2012, Vantage, an offshore drilling company, brought an action in Texas state court against Hsin-Chi Su, also known as Nobu Su, alleging breach of fiduciary duty, fraud, fraudulent inducement, negligent misrepresentation, and unjust enrichment (the "Vantage Litigation"). In its original petition, Vantage alleged that Su made material misrepresentations to induce Vantage to contract with companies controlled by Su for the acquisition of certain offshore drilling rigs and drillships. Vantage alleges that, in exchange, it issued approximately 100 million shares of Vantage stock to F3 Capital, an entity solely owned and wholly controlled by Su, and granted Su three seats on Vantage's board of directors, including a seat for himself. According to Vantage, the subsequent disclosure of Su's misrepresentations placed Vantage

2

No. 13-20622
c/w No. 13-20715

in severe financial duress, threatening its ability to obtain necessary financing and its ability to perform on several critical contracts. Vantage alleges that Su leveraged Vantage's financial crisis to extract additional Vantage stock and other benefits. Among other relief, Vantage sought a "[j]udgment imposing a constructive trust upon all profits or benefits, direct or indirect, obtained by Su."

Su removed the Vantage Litigation pursuant to 28 U.S.C. § 1446 to the United States District Court for the Southern District of Texas, alleging diversity jurisdiction.[1] Vantage moved to remand, which the district court denied.[2] On appeal, this Court reversed and remanded the Vantage Litigation to the district court with instructions to remand the case to state court.[3]

B

Meanwhile, in 2013, twenty-three foreign marine shipping companies, each owned directly or indirectly by Su, filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.[4] Certain creditors of the shipping companies moved to dismiss the bankruptcy actions, arguing, among other things, that: (a) the shipping companies had filed the petitions in bad

---

[1] *See* Notice of Removal, *Vantage Drilling Co. v. Su*, No. 4:12-CV-03131 (S.D. Tex. Oct. 22, 2012), Dkt. No. 1.

[2] *See* Opinion on Remand, *Vantage Drilling Co. v. Su*, No. 4:12-CV-03131 (S.D. Tex. Apr. 3, 2013), Dkt. No. 43.

[3] *Vantage Drilling Co. v. Su*, 741 F.3d 535, 539 (5th Cir. 2014).

[4] The shipping companies were: (1) A Whale Corporation; (2) B Whale Corporation; (3) C Whale Corporation; (4) D Whale Corporation; (5) E Whale Corporation; (6) G Whale Corporation; (7) H Whale Corporation; (8) A Duckling Corporation; (9) F Elephant Corporation; (10) F Elephant Inc.; (11) A Ladybug Corporation; (12) C Ladybug Corporation; (13) D Ladybug Corporation; (14) A Handy Corporation; (15) B Handy Corporation; (16) C Handy Corporation; (17) B Max Corporation; (18) New Flagship Investment Co., Ltd.; (19) RoRo Line Corporation; (20) Ugly Duckling Holding Corporation; (21) Great Elephant Corporation; (22) TMT Procurement Corporation; and (23) TMT USA Shipmanagement LLC.

No. 13-20622
c/w No. 13-20715

faith to delay or withhold any recovery by the creditors; (b) the shipping companies had manufactured jurisdiction to stay the creditors' collection efforts; and (c) there was not a reasonable likelihood of rehabilitating the shipping companies.

The bankruptcy court held an evidentiary hearing on the motion to dismiss. At the hearing, Su offered to place approximately 25 million shares of Vantage stock held by F3 Capital into an escrow to be administered by the bankruptcy court to secure the shipping companies' compliance with court orders and to serve as collateral for post-petition borrowing or working capital. The bankruptcy court denied the motion to dismiss, except with respect to F Elephant Corporation and TMT USA Shipmanagement LLC. In its order (the "Dismissal Order"), the bankruptcy court ordered that the twenty-one remaining shipping companies (the "Debtors") "must cause non-estate property (the 'Good Faith Property') with a fair market value of $40,750,000 to be provided to the Estates," and that, if the Good Faith Property was not provided in cash, then it "must include at least 25,000,000 shares of the common stock of" Vantage. The bankruptcy court provided that the Good Faith Property would be used to, among other things: (a) ensure compliance with court orders; (b) pay sanctions; (c) serve as collateral for working capital loans; and (d) satisfy any amounts arising under § 507(b) of the Bankruptcy Code.

The Debtors moved the bankruptcy court to approve a proposed escrow agreement, by which F3 Capital would deposit 25 million shares of Vantage stock with the clerk of the court to be held *in custodia legis* for the benefit of the Debtors.[5] In that motion, F3 Capital and Su represented and warranted that they could "enter into the Share Escrow Agreement and deliver the Good

---

[5] The Debtors later filed an amended motion.

4

No. 13-20622
c/w No. 13-20715

Faith Property to the Court without violating any requirements of, or injunctive relief granted in, the [Vantage Litigation]."

Vantage responded in two ways. First, Vantage filed an application for a preliminary injunction with the district court in the Vantage Litigation, requesting that Su be enjoined from "transferring, selling, pledging or otherwise encumbering any of the Vantage stock . . . obtained as a result of his fraud and breaches of fiduciary duty to [Vantage], including by placing the shares into escrow to serve as collateral in an unrelated bankruptcy recently initiated by twenty-three insolvent foreign companies that are wholly-owned and controlled by Su."[6]  In response, the district court entered an order in which it stated: (a) "[c]omplaints about the encumbrance of [Vantage's] stock arising out of the bankruptcy must be addressed to the bankruptcy court," and (b) Su "may not otherwise sell, transfer, pledge, or encumber his Vantage stock without court permission."[7]

Second, Vantage also appeared as a "party in interest" before the bankruptcy court and opposed the Debtors' motion to approve the proposed escrow agreement.  The bankruptcy court held a hearing on the Debtors' motion, at which it concluded that:

> [T]he shares owned by F3 Capital are not subject to a constructive trust as a matter of law and, therefore, may be placed *in custodia legis* without complaint by any other party who has claimed ownership of the shares. . . .
>
> . . . .
>
> I find that this is a due process issue and that an entity that is not a party to a lawsuit, which is the

---

[6] Vantage Drilling Co.'s Application for Preliminary Injunction and Motion for Expedited Discovery at 1, *Vantage Drilling Co. v. Su*, No. 4:12-cv-03131 (S.D. Tex. Aug. 14, 2013), Dkt. No. 75.

[7] Order on Stock Encumbrance at 1, *Vantage Drilling Co. v. Su*, No. 4:12-cv-03131 (S.D. Tex. Aug. 14, 2013), Dkt. No. 79.

No. 13-20622
c/w No. 13-20715

> situation with F3 Capital in [the Vantage Litigation],
> may not be deprived of its property in a suit in which,
> (a) it is not a party, and (b) it received the assets prior
> to the commencement of the lawsuit.

The bankruptcy court entered an order (the "Escrow Order") in which, among other things, it:  (a) authorized the deposit of 25,107,142 shares of Vantage stock with the clerk of the court *in custodia legis*; (b) provided that the deposited shares of Vantage stock would be used for the same reasons enumerated in the Dismissal Order; (c) required F3 Capital to deposit an additional 900,000 shares of Vantage stock; (d) provided that F3 Capital would retain its voting rights in the deposited shares of Vantage stock; and (e) required F3 Capital to transfer to the Debtors "all of its interests in any chose of action arising against [Vantage], its officers, agents or directors."  Vantage filed an interlocutory appeal of the Escrow Order with the United States District Court for the Southern District of Texas.

## C

The district court withdrew the reference to the bankruptcy court and denied leave to appeal.  It then set a hearing to reconsider, among other issues, Vantage's objections to the Escrow Order.  Before the hearing, the Debtors filed an emergency motion in which they requested permission to borrow up to $20 million in post-petition financing (the "DIP Facility"), including up to $6 million on an interim basis pursuant to an attached term sheet.  The district court approved in principle the emergency motion and entered an order (the "Interim DIP Order"), which authorized an initial loan of $6 million under the DIP Facility.  The Interim DIP Order granted Macquarie Bank Limited (the "DIP Lender") a first priority lien and security interest in the deposited shares of Vantage stock.  The Interim DIP Order further provided that the DIP Lender's interests in the deposited shares of Vantage stock "shall not be

6

No. 13-20622
c/w No. 13-20715

withdrawn, modified, abridged, compromised, stayed, reprioritized or otherwise affected in any matter by any subsequent order [of] the Bankruptcy Court . . . in the Chapter 11 [actions] or that [the District Court] might enter in either the Chapter 11 [actions] or in [the Vantage Litigation]." It also provided that the DIP Lender had extended financing to the Debtors in good faith and was entitled to "the full protections of sections 363(m) and 364(e) of the Bankruptcy Code." It further ordered that "[i]f any or all of the provisions of [the Interim DIP Order] are hereafter reversed, modified, vacated or stayed, that action will not affect . . . the validity and enforceability of any lien . . . authorized or created hereby or pursuant to [the term sheet], including . . . the special provisions concerning [the deposited shares of Vantage stock]."

The next day, the district court entered an order (the "DIP Addendum"), in which it ordered F3 Capital to deposit an additional 4 million shares of Vantage stock (together with the 25,107,142 shares of Vantage stock originally deposited, the "Vantage Shares") with the clerk of the court to be held *in custodia legis.* The district court also entered another order (the "Order Affirming Escrow"), which provided that the Vantage Shares would "remain under the control" of the bankruptcy court. The district court then re-referred the action to the bankruptcy court. Vantage timely appealed these three district court orders to this Court.[8]

D

After holding hearings, the bankruptcy court entered two orders (the "Final DIP Order" and the "Cash Collateral Order") over the objections of Vantage. The Final DIP Order approved the remaining $14 million in post-petition financing under the DIP Facility requested by the Debtors on terms

---

[8] The appeal was filed under Case No. 13-20622.

No. 13-20622
c/w No. 13-20715

substantially identical to those memorialized in the Interim DIP Order.  Like the Interim DIP Order, the Final DIP Order granted the DIP Lender a first priority lien and security interest in the Vantage Shares.  The Final DIP Order also provided that the "DIP Lender [was] extending financing to the [Debtors] in good faith and in express reliance upon the protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code and the DIP Lender is entitled to the benefits of the provisions of sections 363(m) and 364(e) of the Bankruptcy Code."[9]  The Cash Collateral Order granted the Debtors' pre-petition lenders a first priority lien in the 4 million shares of Vantage stock deposited pursuant to the DIP Addendum "to secure any rights, claims or grants that were given to the [pre-petition lenders] in any prior order" of the bankruptcy court.  Among other things, it also provided that "[a]ny rights in [the Vantage Shares] are fully subordinated to the rights granted in [the Final DIP Order] to the DIP Lender."

Vantage timely appealed these two bankruptcy court orders.  The bankruptcy court certified the appeal for direct review by this Court.  This Court accepted that direct appeal[10] and consolidated it with the prior pending appeal of the district court orders.

## II

In reviewing the rulings of the bankruptcy court on direct appeal and the district court sitting in bankruptcy, we review findings of fact for clear error

---

[9] The bankruptcy court also reiterated its finding twice that the DIP Lender had negotiated in good faith and "should be deemed a good faith lender in accordance with the Bankruptcy Code" on the record at the hearing.

[10] The appeal was filed under Case No. 13-20715.

No. 13-20622
c/w No. 13-20715

and conclusions of law *de novo*.[11]  We review mixed questions of law and fact *de novo*.[12]

## III

The Debtors assert that Vantage's appeal of all the orders is moot under 11 U.S.C. § 363(m) and 11 U.S.C. § 364(e).  The Bankruptcy Code contains statutory mootness provisions in § 363(m) and § 364(e).  Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.[13]

Section 364(e) provides:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.[14]

---

[11] *See In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1042 (5th Cir. 2012); *In re Martinez*, 564 F.3d 719, 725–26 (5th Cir. 2009).

[12] *In re ASARCO, L.L.C.*, 702 F.3d 250, 257 (5th Cir. 2012).

[13] 11 U.S.C. § 363(m).

[14] *Id.* § 364(e).

No. 13-20622
c/w No. 13-20715

As noted by the Ninth Circuit, § 364(e) was modeled after § 363(m).[15] A failure to obtain a stay of an authorization under these sections moots an appeal of that authorization where the purchaser or lender acted in good faith.[16]  It is undisputed that Vantage did not seek or obtain a stay of any of the orders. Vantage argues that this appeal is not statutorily moot for several reasons.

We begin first with Vantage's assertion that the appeal is not moot under either § 363(m) or § 364(e) because § 363 and § 364 only authorize actions in connection with "property of the estate,"[17] and the Vantage Shares are not "property of the estate."  This is essentially a statutory attack, but with undertones of subject-matter jurisdiction.  This is because whether something is "property of the estate" is an inquiry also relevant to determining subject-matter jurisdiction.[18]  Consistent with our precedent, we do not reach the issue of whether the Vantage Shares are "property of the estate" before deciding the statutory mootness issue because of Vantage's failure to obtain a stay pending appeal.[19]  For the same reason, even though Vantage raises a challenge to subject-matter jurisdiction, we do not reach that issue before deciding the statutory mootness issue.[20]

---

[15] *In re Adams Apple, Inc.*, 829 F.2d 1484, 1489 (9th Cir. 1987).

[16] *See In re Pac. Lumber Co.*, 584 F.3d 229, 240 n.15 (5th Cir. 2009); *In re Gilchrist*, 891 F.2d 559, 560–61 (5th Cir. 1990); *In re First S. Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987).

[17] *See* 11 U.S.C. § 363(b)(1) ("The trustee . . . may use, sell, or lease . . . property of the estate . . . ."); *Id.* § 364(c) ("[T]he trustee . . . may authorize the obtaining of credit or the incurring of debt . . . secured by a lien on property of the estate . . . or secured by a junior lien on property of the estate . . . .").

[18] *See infra* Part IV(B).

[19] *See In re Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990); *In re Ginther Trusts*, 238 F.3d 686, 689 (5th Cir. 2001).

[20] *See In re Gilchrist*, 891 F.2d at 561; *In re Ginther Trusts*, 238 F.3d at 689.

No. 13-20622
c/w No. 13-20715

We next turn to Vantage's argument that the appeal is not moot under either § 363(m) or § 364(e) because the DIP Lender did not act in "good faith."[21] The Debtors contend that we should not reach the issue of "good faith" because Vantage failed to contest that issue below and is only raising it for the first time on appeal. "It is well established that we do not consider arguments or claims not presented to the bankruptcy court."[22] Vantage argues that it sufficiently raised the issue before the courts below by repeatedly asserting that F3 Capital had fraudulently obtained the Vantage Shares; Vantage had an adverse claim to the Vantage Shares; and Vantage's right to assert a constructive trust over the Vantage Shares would survive any attempt to pledge, sell, or transfer the Vantage Shares to a purchaser or lender who was on notice of Vantage's adverse claim, including the DIP Lender. We agree. Vantage sufficiently raised the issue of the DIP Lender's "good faith" so as to pursue this issue on appeal. Therefore, we must determine whether the DIP Lender acted in "good faith" within the meaning of § 363(m) and § 364(e).

The proponent of "good faith" bears the burden of proof.[23] Both the district court sitting in bankruptcy and the bankruptcy court held that the DIP Lender was acting in good faith. Whether a determination by a lower court

---

[21] Because we find Vantage's "good faith" argument persuasive, we do not address the two additional reasons offered against mootness. First, Vantage argues that only the Interim DIP Order and the Final DIP Order refer to § 363(m) or § 364(e); authorize post-petition financing; or contain an explicit finding of "good faith." Because the Order Affirming Escrow, the DIP Addendum, and the Cash Collateral Order do not refer to § 363(m) or § 364(e), do not authorize a sale, lease, or post-petition financing, and do not contain an explicit finding of "good faith," Vantage argues that the appeal is not moot as to these orders. Second, Vantage asserts that the protections enumerated in § 363(m) do not apply because none of the orders authorizes "a sale or lease of property" pursuant to § 363.

[22] *In re Gilchrist*, 891 F.2d at 561 (refusing to address the appellant's challenge to the buyer's good faith under § 363(m) because it had not been raised before the bankruptcy court); *see also In re Ginther Trusts*, 238 F.3d 686, 689 (5th Cir. 2001).

[23] *In re M Capital Corp.*, 290 B.R. 743, 747 (B.A.P. 9th Cir. 2003).

No. 13-20622
c/w No. 13-20715

that a party acted in "good faith" should be review *de novo* or under clear error is a matter of some confusion in our circuit.[24] However, under either standard of review, we find that the determination of good faith does not pass muster.

The Bankruptcy Code does not explicitly define "good faith." In the context of § 363(m), we have defined the term in two ways. On the one hand, we have defined a "good faith purchaser" as "one who purchases the assets for value, in good faith, and without notice of adverse claims."[25] On the other hand, we have noted that "the misconduct that would destroy a purchaser's good faith status . . . involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[26] Here, there is no suggestion of fraud, collusion, or an attempt to take grossly unfair advantage by the DIP Lender. Rather, Vantage only argues that the DIP Lender was on notice of Vantage's adverse claim to the Vantage Shares.

Before we turn to whether the DIP Lender had notice of an adverse claim, however, we must address a threshold argument. Essentially, the

---

[24] On the one hand, we have stated that when a district court hearing a bankruptcy appeal dismisses an appeal from the bankruptcy court as moot, we review that dismissal *de novo*. *In re Ginther Trusts*, 238 F.3d at 688. Similarly, the Sixth Circuit has held that "good faith" is a mixed question of law and fact. *In re Revco D.S., Inc.*, 901 F.2d 1359, 1366 (6th Cir. 1990) (reviewing finding of "good faith" under § 364(e)). This would suggest that the good faith determinations by the lower courts are subject to a *de novo* determination. On the other hand, we have previously reviewed a bankruptcy court's "good faith" determination under § 363(m) for clear error. *In re Beach Dev. LP*, No. 07-20350, 2008 WL 2325647, at *2 (5th Cir. Jun. 6, 2008). District courts in our circuit have done the same. *In re Camp Arrowhead, Ltd.*, 429 B.R. 546, 550–52 (W.D. Tex. 2010).

[25] *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir. 1988) (quoting *In re Willemain*, 764 F.2d 1019, 1023 (4th Cir. 1985)); *see also SEC v. Janvey*, 404 F. App'x 912, 916 (5th Cir. 2010) (applying the "good faith" standard set forth in *Hardage*); *see also Jeremiah v. Richardson*, 148 F.3d 17, 23 (1st Cir. 1998) ("A 'good faith' purchaser is one who buys property in good faith and for value, *without knowledge of adverse claims*." (internal quotation marks omitted) (emphasis in original)).

[26] *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

No. 13-20622
c/w No. 13-20715

Debtors want us to discard one of the definitions of "good faith." The Debtors argue that knowledge of an adverse claim should not preclude a finding of "good faith" because this requirement would undermine the purposes of § 363(m) and § 364(e). We acknowledge that there is some power in this argument. The purpose of § 363(m)'s stay requirement "is in furtherance of the policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely."[27] Similarly, the purpose of § 364(e) is "to overcome a good faith lender's reluctance to extend financing in a bankruptcy context by permitting reliance on a bankruptcy judge's authorization."[28]  Thus, both § 363(m) and § 364(e) contemplate situations where the good faith purchaser or lender has knowledge of the pendency of an appeal. Yet the good faith purchaser or lender "does not forfeit the protections of the statute," "even though such knowledge implies the further knowledge that there are objections to the order."[29] "[I]t is clear as we have said that knowledge that there are objections to the transaction is not enough to constitute bad faith."[30]  We do not disagree with this accent on the meaning of "good faith."  But we think it is irrelevant here. There is a difference, as demonstrated by this case, between simply having knowledge that there are objections to the transaction and having knowledge of an adverse claim.  Having knowledge that there are objections to the transaction usually involves those situations in which "some creditor is objecting to the transaction and is trying to get the district court or the court

---

[27] *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986) (internal quotation marks omitted).

[28] *In re Adams Apple*, 829 F.2d at 1488; *see also In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1195 (10th Cir. 1999); *In re Saybrook Mfg. Co.*, 963 F.2d 1490, 1493 (11th Cir. 1992); *In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982).

[29] *In re EDC Holding Co.*, 676 F.2d at 947.

[30] *Id.*

of appeals to reverse the bankruptcy judge."[31]  Having knowledge of an adverse claim requires something more.  That is why the former does not preclude a finding of good faith, whereas the latter does.  Here, the DIP Lender's knowledge was not simply limited to objections by creditors of the Debtors.  The DIP Lender had knowledge that a third-party, entirely unrelated to the bankruptcy proceedings, had an adverse claim to the Vantage Shares.  On these facts, the DIP Lender does not qualify as a good faith purchaser or lender.  To our eyes, both definitions have to be applied.[32]

We turn our attention, then, to whether the DIP Lender had notice of an adverse claim.  The Bankruptcy Code does not provide a definition of "adverse claim."  But it defines "claim" broadly to include a right to payment or a right to equitable remedy.[33]  The Debtors assert that there was no "adverse claim" because F3 Capital, the owner of the Vantage Shares, was not a named defendant in the Vantage Litigation.  But Vantage instituted the Vantage Litigation to, among other things, recover the Vantage Shares and has repeatedly asserted before the bankruptcy court and the district court that F3 Capital had fraudulently obtained the Vantage Shares and that Vantage had an adverse claim to the Vantage Shares.  We find that this was enough: the DIP Lender had adequate notice of the adverse claim, and the DIP Lender does

---

[31] *Id.*

[32] *See In re Rock Indus. Mach. Corp.*, 572 F.2d at 1197–98 (defining "good faith purchaser" as "one who purchases the assets for value, in good faith, and without notice of adverse claims" while also noting that "the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders").

[33] 11 U.S.C. § 101(5).  A claim means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.*  Similarly, a claim means "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." *Id.*

No. 13-20622
c/w No. 13-20715

not come within the meaning of "good faith" as envisioned by § 363(m) and § 364(e). The statutory mootness provisions are not applicable here, and Vantage may challenge the orders issued by the bankruptcy court and the district court.

## IV

Vantage argues that the district court and the bankruptcy court erred in entering the orders because they lacked subject-matter jurisdiction over both the Vantage Shares and the Vantage Litigation.[34]

## A

Jurisdiction for bankruptcy cases is defined by 28 U.S.C. § 1334.[35] Under § 1334, district courts have exclusive jurisdiction of "all cases under title 11,"[36] including over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."[37] Districts courts also have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[38] The district court can refer cases to the bankruptcy court,[39] whose jurisdiction is more limited.[40]

---

[34] *See In re Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993) ("Where a federal court lacks jurisdiction, its decisions, opinions, and orders are void.").

[35] *In re Walker*, 51 F.3d 562, 568 (5th Cir. 1995).

[36] 28 U.S.C. § 1334(a).

[37] 28 U.S.C. § 1334(e)(1); *see also Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("The district in which a chapter 11 petition is filed has exclusive jurisdiction over the property of the estate.").

[38] *See* 28 U.S.C. § 1334(b).

[39] 28 U.S.C. § 157(a).

[40] Bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" and "enter appropriate orders and judgment."  28 U.S.C. § 157(b); *In re Wood*, 825 F.2d 90, 95 (5th Cir. 1987).  In contrast to core proceedings, bankruptcy judges have the limited power to "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11" and to "submit proposed findings of fact and conclusions of law to the district court," subject to *de novo* review.  28 U.S.C. § 157(c); *In re Wood*, 825 F.2d at 95.

No. 13-20622
c/w No. 13-20715

Because § 1334(b) defines jurisdiction conjunctively, "a district court has jurisdiction over the subject matter if it is at least related to the underlying bankruptcy."[41]  A matter is "related to" the bankruptcy if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."[42]

## B

Vantage first asserts that the district court and the bankruptcy court lacked jurisdiction over the Vantage Shares because they are not property of the Debtors or "property of the estate."

Although the Bankruptcy Code does not define "property of the debtor," the meaning of the term "property of the estate" is outlined in 11 U.S.C. § 541. Under § 541(a)(1), "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[43] Under § 541(a)(6), it includes "[p]roceeds, product, offspring, rents, or profits from property of the estate."[44]  Finally, under § 541(a)(7), it also includes "[a]ny interest in property that the estate acquires after the commencement of the case."[45]  "The party seeking to include property in the estate bears the burden of showing that the item is property of the estate."[46]

To begin, it is undisputed that the Debtors had no legal or equitable interest in the Vantage Shares at the commencement of the case.  The Vantage Shares thus could not have been "property of the estate" under § 541(a)(1). Similarly, they could not be "[p]roceeds, product, offspring, rents, or profits

---

[41] *In re Querner*, 7 F.3d at 1201.

[42] *In re Wood*, 825 F.2d at 93.

[43] 11 U.S.C. § 541(a)(1).

[44] *Id.* § 541(a)(6).

[45] *Id.* § 541(a)(7).

[46] *In re Klein-Swanson*, 488 B.R. 628, 633 (B.A.P. 8th Cir 2013).

No. 13-20622
c/w No. 13-20715

from property of the estate" under § 541(a)(6). Therefore, they could not be considered "property of the estate" under these provisions.

But the Debtors assert that the Vantage Shares are "property of the estate" under § 541(a)(7) because they are "interest[s] in property that the estate acquire[d] after the commencement of the case." Specifically, the Debtors assert that they acquired an interest in the Vantage Shares after the Vantage Shares were deposited *in custodia legis* pursuant to the orders. Vantage asserts that the Vantage Shares are not property of the estate under § 541(a)(7) for several reasons.

Vantage contends that the Debtors never acquired an interest in the Vantage Shares. "Property interests are created and defined by state law," in this case Texas law.[47] The Escrow Order required the Debtors to deposit "*non-estate property*" with the clerk of the court. F3 Capital deposited the Vantage Shares *in custodia legis*; however, F3 Capital continues to retain title to the Vantage Shares and control their voting rights. Moreover, the deposit of the Vantage Shares is neither a loan nor a gift. The Debtors also did not acquire the right to control or retain the Vantage Shares.[48] As a result, Vantage argues that the Debtors have not acquired any cognizable interest. The Debtors reply that they acquired an interest in the Vantage Shares because they can use the Vantage Shares as collateral to secure loans from the DIP Lender pursuant to the Escrow Order. But Vantage correctly notes that courts have consistently

---

[47] *In re Swift*, 129 F.3d 792, 795 & n.12 (5th Cir. 1997); *In re Klein-Swanson*, 488 B.R. at 633.

[48] *See In re IFS Fin. Corp.*, 669 F.3d 255, 262 (5th Cir. 2012) (noting that, under Texas law, "control over funds in an account is the predominant factor in determining an account's ownership"); *see also In re Kemp*, 52 F.3d 546, 551–53 (5th Cir. 1995) (per curiam) (holding that funds held in escrow are "property of the estate" only to the extent of the debtor's independent right to that property); *In re Missionary Baptist Found. of Am., Inc.*, 792 F.2d 502, 505–06 (5th Cir. 1986) (same).

No. 13-20622
c/w No. 13-20715

held that other forms of collateral do not constitute "property of the estate" under § 541.[49]  Vantage therefore asserts that the Debtors did not acquire an interest in the Vantage Shares simply by using them as collateral to secure lending from the DIP Lender.

We need not decide this question of state law, however.  Even assuming *arguendo* that the Debtors acquired an interest, Vantage asserts that the Vantage Shares are not property of the estate under § 541(a)(7) because that provision is limited to property interests that are themselves traceable to "property of the estate" or generated in the normal course of the debtor's business.  We agree.  As we previously recognized in *In re McLain*,[50] "Congress enacted § 541(a)(7) to clarify its intention that § 541 be an all-embracing definition and to ensure that property interests created with or by property of the estate are themselves property of the estate."[51]  Other courts have adopted similar reasoning.[52]  Thus, the Vantage Shares are not "property of the estate"

---

[49] *In re Stonebridge Techs., Inc.*, 430 F.3d 260, 269 (5th Cir. 2005) (per curiam) ("It is well-established in this circuit that letters of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate."); *see also In re Lockard*, 884 F.2d 1171, 1178 (9th Cir. 1989) ("[W]e conclude that the surety bond at issue in this case is not 'property of the estate,' within the meaning of 11 U.S.C. § 541.").

[50] 516 F.3d 301 (5th Cir. 2008).

[51] *Id.* at 312 (internal quotation marks omitted).

[52] *In re Trinity Gas Corp. (Reorganized)*, 242 B.R. 344, 350 (Bankr. N.D. Tex. 1999) ("[T]he obvious purpose of § 541(a)(7) is to include property and rights which are acquired in the estate's normal course of business in property of the estate."); *In re Doemling*, 116 B.R. 48, 50 (Bankr. W.D. Pa. 1990) ("Relatively few courts have been called upon to determine whether a property interest which was acquired postpetition in a Chapter 11 case qualifies as property of the estate pursuant to § 541(a)(7).  The following principle can, however, be extracted from certain of those cases:  a property interest acquired postpetition during the pendency of a Chapter 11 case qualifies as property of the estate, for purposes of § 541(a)(7), only if said property interest is traceable to (or arises out of) some prepetition property interest which already is included in the bankruptcy estate."); *see also Segal v. Rochelle*, 382 U.S. 375, 380 (1966) (holding that whether property is included in an estate depends on whether it "is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start").

No. 13-20622
c/w No. 13-20715

under § 541(a)(7) because they were not created with or by property of the estate, they were not acquired in the estate's normal course of business, and they are not traceable to or arise out of any prepetition interest included in the bankruptcy estate.

The Debtors do not assert that they have an interest in the Vantage Shares that was created with or by other "property of the estate" or that arose in the normal course of business. But they assert that these tracing limitations apply to individual debtors in Chapter 7 or Chapter 11 bankruptcies, not to corporate debtors in Chapter 11 bankruptcies. For corporate debtors in Chapter 11 bankruptcies, the Debtors assert that § 541(a)(7) covers "*[a]ny interest in property that the estate acquires after the commencement of the case.*"[53] But the Debtors cite no case standing for the proposition that these restrictions on the application § 541(a)(7) do not apply to the estate of a corporate debtor in a Chapter 11 proceeding, and we refuse to adopt such a holding.

Finally, Vantage points out that the Debtors cannot rely on the orders as the means by which the Vantage Shares became "property of the estate" because the bankruptcy court and the district court had no authority to issue the orders unless the Vantage Shares were already "property of the estate." The bankruptcy court and the district court could not manufacture *in rem* jurisdiction over the Vantage Shares by issuing orders purporting to vest the Debtors with a post-petition interest in the Vantage Shares.[54] We agree. The

---

[53] 11 U.S.C. § 541(a)(7) (emphasis added).

[54] *See Celotex Corp. v. Edwards*, 514 U.S. 300, 327 (1995) (holding that a bankruptcy court could not use "jurisdictional bootstrap[s]" to "exercise jurisdiction that would not otherwise exist"); *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1182 (3d Cir. 1996) (holding that a consent order purporting to exert jurisdiction over non-estate property cannot "be utilized to support a finding of subject matter jurisdiction over claims that otherwise could not be heard in bankruptcy court").

No. 13-20622
c/w No. 13-20715

Debtors cannot use the orders as "jurisdictional bootstrap[s]" to allow the district court and bankruptcy court to "exercise jurisdiction that would not otherwise exist."[55]

For these reasons, we conclude that the Vantage Shares are not property of the Debtors or "property of the estate."[56]  Therefore, the district court and the bankruptcy court lacked jurisdiction on this basis.

## C

Vantage next asserts that the district court and bankruptcy court lacked jurisdiction to adjudicate Vantage's claim in the Vantage Litigation because it is not "related to" the Debtors' Chapter 11 proceedings.  A matter is "related to" a bankruptcy proceeding if "the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy."[57]  Certainty, therefore, is "unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate."[58]  But "'related to' jurisdiction cannot be limitless."[59]

Vantage asserts that the bankruptcy court and the district court lacked jurisdiction to interfere with its rights in the Vantage Shares, which are the subject of the Vantage Litigation, because the outcome of that proceeding could not conceivably affect the Debtors' estates.  We agree.  This Court has previously held that bankruptcy jurisdiction does not extend to state law

---

[55] *Celotex*, 514 U.S. at 327.

[56] Because we conclude that the Vantage Shares are not "property of the estate," the Interim DIP Order and the Final DIP Order were not authorized under § 364 which only authorizes the imposition of liens on "property of the estate."  *See* 11 U.S.C. § 364(c)(2)–(3), (d)(1).

[57] *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).

[58] *Id.*

[59] *Celotex*, 514 U.S. at 308.

No. 13-20622
c/w No. 13-20715

actions between non-debtors over non-estate property.[60]  The Supreme Court

in *Celotex* read the "related to" prong more broadly to cover non-debtor actions

involving non-estate property that nonetheless affect the estate:

> [T]he 'related to' language of § 1334(b) must be read to
> give district courts (and bankruptcy courts under §
> 157(a)) jurisdiction over more than simple proceedings
> involving the property of the debtor or the estate.  We
> also agree . . . that a bankruptcy court's 'related to'
> jurisdiction cannot be limitless.[61]

However, even under *Celotex*'s broad reading, there is no justifiable basis for

exercising jurisdiction over the Vantage Litigation.  The only discernable link

between the Vantage Litigation and the Debtors' Chapter 11 proceedings is

that F3 Capital and the Debtors' have a common owner.  This is not enough.

The resolution in the Vantage Litigation would not have had any effect on the

bankruptcy.   As a result, the bankruptcy court and the district court

improperly interfered with the Vantage Litigation by ordering that the

Vantage Shares be deposited *in custodia legis* with the clerk of the court; that

no subsequent orders in the Vantage Litigation could impair the DIP Lender's

interest in the Vantage Shares; that any rights in the Vantage Shares,

including those of Vantage, are subordinated to those of the DIP Lender; and

that the Vantage Shares are not subject to a constructive trust as a matter of

law.

---

[60] *See In re Paso Del Norte Oil Co.*, 755 F.2d 421, 424 (5th Cir. 1985) ("A court of bankruptcy has no power to entertain collateral disputes between third parties that do not involve the bankrupt or its property, nor may it exercise jurisdiction over a private controversy which does not relate to matters pertaining to bankruptcy." (citations omitted)); *see also In re Vitek, Inc.*, 51 F.3d 530, 533–38 (5th Cir. 1995).

[61] 514 U.S. at 308; *see also In re Prescription Home Health Care, Inc.*, 316 F.3d 542, 547 (5th Cir. 2002) ("It is well-established that, to be 'related to' a bankruptcy, it is not necessary for the proceeding to be against the debtor or the debtor's property.").

No. 13-20622
c/w No. 13-20715

The Debtors maintain that the bankruptcy court and the district court had jurisdiction to enter the orders because the orders deal with core proceedings involving the administration of the estate, the acquisition of credit, and the use of property, including cash collateral.[62] This argument muddies the water somewhat because before a court can decide whether an action is a core or a non-core proceeding, it must first determine whether subject-matter jurisdiction under § 1334 even exists.[63] But in any event, we can reject this argument without much explanation. The Vantage Litigation does not fall within the meaning of core proceedings. Our sister circuits have previously rejected this kind of argument in cases where bankruptcy courts adjudicated a non-debtor's right in non-estate property.[64] Similarly, in *In re Wood*,[65] we held that the term "core proceedings" under 28 U.S.C. § 157 did not cover unrelated and independent state court proceedings, such as the Vantage Suit:

> We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. The proceeding before us does not meet this test and, accordingly, is a non-core proceeding. The plaintiff's suit is not based on any right created by the federal bankruptcy law. It is based on state created rights. Moreover, this suit is not a proceeding that could arise

---

[62] *See* 28 U.S.C. § 157(b)(2)(A), (D) & (M).

[63] *In re Wood*, 825 F.2d at 92–95.

[64] *See In re Guild & Gallery Plus*, 72 F.3d at 1180 ("Since the Summertime painting was not part of the bankrupt estate, then *a fortiori* this matter cannot fall within § 157(b)(2)(A), which can only be applied to matters concerning the administration of the bankrupt estate. . . . The plain language of § 157(b)(2)(A) applies only to property of the bankrupt estate."); *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 190 (5th Cir. 1990) ("Whatever else a core proceeding must be, it must involve a decision that ultimately affects the distribution of the debtor's assets.").

[65] 825 F.2d 90 (5th Cir. 1987).

No. 13-20622
c/w No. 13-20715

> only in the context of a bankruptcy. It is simply a state
> contract action that, had there been no bankruptcy,
> could have proceeded in state court.[66]

But as explained above, not only was the Vantage Litigation not a core proceeding, it was not even a non-core proceeding because there is no "related to" jurisdiction in this case. Simply put, the Debtors confuse the argument by putting the matter of placement of jurisdiction (core versus non-core proceedings) before the matter of the existence of subject-matter jurisdiction.

The Debtors also assert that the orders did not interfere with or impair the Vantage Litigation or Vantage's claim to the Vantage Shares. They note that the bankruptcy court and the district court expressed no views on the collateral estoppel effect of their rulings in the Vantage Litigation. This argument fails to persuade because the orders authorized the imposition of liens on the Vantage Shares, subordinated Vantage's rights in the Vantage Shares to those of the DIP Lender, prevented the district court in the Vantage Litigation from impairing the DIP Lender's interest in the Vantage Shares, and held that the Vantage Shares were not subject to a constructive trust as a matter of law. Finally, the Debtors contend that, in any event, Vantage's right to due process under the Fifth Amendment was not infringed because it had the opportunity to be heard at every stage of the proceedings that resulted in the orders.[67] This argument misses the mark—the question is whether the bankruptcy court and the district court had jurisdiction to enter the orders, not whether Vantage's right to due process was violated.

---

[66] *Id.* at 97.

[67] *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotations omitted)).

No. 13-20622
c/w No. 13-20715

For these reasons, we conclude that Vantage's claim in the Vantage Litigation was not "related to" the Debtors' Chapter 11 proceedings. Before the district court and the bankruptcy court exercised jurisdiction over the Vantage Shares, the outcome of the Vantage Litigation could not have had any conceivable effect on the Debtors' estate. In essence, the Debtors have again attempted to use the orders as "jurisdictional bootstrap[s]" by arguing that the Vantage Litigation is "related to" the Debtors' Chapter 11 proceedings because the orders have linked them.[68] This we cannot allow.

## V

We conclude that the appeals are not moot, that the Vantage Shares are not "property of the estate," and that the Vantage Litigation is not "related to" the bankruptcy proceedings. The district court and the bankruptcy court had no subject-matter jurisdiction to enter the orders. The orders of the district court and the bankruptcy court are VACATED and this case is REMANDED for proceedings consistent with this opinion. Accordingly, the Debtors' Motion to Dismiss Appeals is DENIED.

---

[68] *See Celotex*, 514 U.S. at 327.